## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

JOHN JOSEPH GOTTLEIB, III, #333-540    *

Plaintiff                           *

v                               *   Civil Action No. RDB-16-51

BALTIMORE COUNTY DETENTION    *
  CENTER,
MEDICAL STAFF,                  *
NURSE PEAL,
NURSE ZEIDERS,                 *
DR. EL-BEDAWI,
DEBORAH RICHARDSON,        *
THOMAS FITZGERALD,
ROBERT AIREY,                *

Defendants                 *
                             ***

### MEMORANDUM OPINION

John Joseph Gottleib is an inmate at the Baltimore County Detention Center ("BCDC").

On January 7, 2016, he filed this Complaint pursuant to 42 U.S.C. §1983 against BCDC and

"Medical Staff,"[1] presenting claims arising from the treatment he received for an infection in his

scrotum. (ECF 1). On January 28, 2016, Gottleib filed a Supplement to the Complaint to name

Deborah Richardson, Thomas Fitzgerald, Robert Airey, Nurse Peal, Nurse Zeiders and Dr. El-

---

[1]  The Baltimore County Detention Center ("BCDC") is not a proper defendant in a § 1983 action, for which a plaintiff must allege injury by a "person" acting under color of state law. *See* 42 U.S.C. § 1983; *Monell v. Department of Social Services,* 436 U.S. 658, 690 & n. 55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *Allison v. California Adult Authority,* 419 F.2d 822, 823 (9th Cir. 1969) (California Adult Authority and San Quentin Prison are not "person[s] subject to suit under 42 U.S.C. § 1983); *Preval v. Reno,* 57 F.Supp.2d 307, 310 (E.D.Va.1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); *Brooks v. Pembroke City Jail,* 722 F.Supp. 1294, 1301 (E.D.N.C.1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). Further, the term "staff" or the equivalent as a name for alleged defendants, without the naming specific staff members, is insufficient to state a claim against a "person" in a 1983 action. *See Harris v. Baltimore City Detention Center* (citations omitted),  PWG-14-2172014, WL 994377 *1-2 (D. Md. March 13, 2014) (citations omitted). The BCDC and "Medical Staff" will be dismissed as defendants.

Bedawi as Defendants. (ECF 5).[2]   Gottleib seeks damages of $5 million dollars and his immediate release from incarceration. *Id.*

Pending are two separate Motions to Dismiss, or in the Alternative, for Summary Judgment (ECF 16, 21).   The first was filed by counsel on behalf of Deborah Richardson, Director of BCDC, Thomas Fitzgerald, Deputy Director of BCDC, and Captain Robert Airey (collectively the "BCDC Defendants").   (ECF 16).   The second Motion was filed by counsel on behalf of Defendants Peal, Zeiders, and El-Bedawi (collectively the "Medical Defendants"). [3] (ECF 21). Consonant with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk sent notice to Gottleib informing him of his right to file Responses to Defendants' dispositive motions and to file affidavits and exhibits in support. (ECF 17, 22).   Gottleib filed Opposition Responses to both dispositive motions, although he filed no declarations. (ECF 18, 23).   The BCDC and Medical Defendants then filed separate Replies. (ECF 24, 25).   Gottleib then filed an "addendum" Response.   (ECF 26).   Also pending is Gottleib's Motion for Appointment of Counsel. (ECF 19).

The issues have been briefed, the matter is ripe for disposition and no hearing is required, *see* Local Rule 105.6 (D. Md. 2016).   Gottleib has adequately presented his claims and no extraordinary reasons are presented to warrant appointment of counsel.   For reasons explained below, this Court will GRANT BOTH MOTIONS TO DISMISS (ECF 16, 21), and DISMISS WITH PREJUDICE the claims against the BCDC Defendants and GRANT summary judgment in favor of the Medical Defendants.

---

[2]   Counsel identifies "Nurse Peal" as "Memmie Peal, LPN, "Nurse Zeiders" as Melvin Zeiders, CRNP, and "Dr. El-Bedawi" as Dr. Khalid El-Bedawi, M.D. (ECF 21-1 n. 1).

[3]   Correct Care Solutions is the contractual medical services provider for the Baltimore County Department of Corrections.   BCDC is not a medical care provider. ECF 16-2 n. 1.

## BACKGROUND

Gottleib alleges that Defendants failed to respond adequately to his medical complaints of a painful and swollen scrotum. Although Gottleib does not specify what constitutional provision has been abridged, Defendants assume he is alleging an Eighth Amendment claim alleging deliberate indifference to a serious medical need. (ECF 16-1 at 3; ECF 21-1). At the time Gottleib alleges the violations occurred, he was a convicted prisoner, serving a sixteen month sentence imposed on October 7, 2015. (ECF 16-4).

## FACTS

The following facts are not in dispute unless noted. On or about November 20, 2015,[4] at 9:00 am. Gottleib noticed his scrotum was painful and swollen "to the size of a grapefruit." (ECF 1 at 4). He informed an unnamed BCDC correctional officer that he needed to be seen by a medical provider. Gottleib told the officer it was an emergency. *Id.* Gottleib asked unidentified officers again at 11:30 am and 3:30 pm to see a medical provider. Gottleib asserts when he asked at 11:30 am for a medical escort, the officer commented that Gottleib did not "look so good." (ECF 1 at 4).[5] Meals were served and correctional officers changed shifts during this time.

Gottleib was escorted to the medical unit that evening, complaining of scrotal swelling and tenderness, fever, and chills. Gottleib informed the nurse that he had noticed a boil in his perineum area the evening before and "popped it." (Declarations of Bonita Cosgrove, BCDC

---

[4] The Complaint states Gottleib asked for medical assistance on November 19, 2015. Defendants' declarations and verified exhibits indicate the date the swelling was first reported was November 20, 2015, and there is no record of sick call requests for this issue before this date. (ECF 16-2; ECF 24-1¶3). Gottleib does not dispute in his oppositions the date he first reported the scrotal swelling on November 20, 2015.

[5] Gottleib does not assert the unnamed correctional officers knew or acted with constitutionally requisite deliberate indifference to his serious medical needs. He suggests "better training for the officers would be appropriate." (ECF 18 ¶1).

3

Medical Liaison ECF 16-2.¶ 2; ECF 24-2 ¶3).[6]  Defendants indicate Gottleib was treated by Nurse Practitioner Okoye for an indurated boil and fever.  ECF 16-2 ¶3; ECF 24-1 ¶3.  She diagnosed Gottleib with cellulitis, a common skin infection caused by bacteria.[7]  She prescribed Tylenol 650 mg to reduce the fever, an oral antibiotic (Bactrim) for ten days for the infection, and warm compresses twice a day to open the boil.  She instructed Gottleib to return to the medical unit in three days for further evaluation. (ECF 1 at 5, ECF 16-2 ¶¶ 2, 3; ECF 24-1 ¶ 3). The parties dispute the identity of the treating medical provider.  The BCDC Defendants assert Nurse Practitioner Okoye attended to Gottleib.  (ECF 24-1 ¶3).  Gottleib claims Memmie Peal examined and treated him. (ECF 23).

The following day, November 21, 2015, Gottleib continued the prescribed oral antibiotics, but his fever, chills, and scrotal swelling persisted.  ECF 1 at 6.  At 3:00 pm, he asked to be seen in the medical unit.

Gottleib was seen by a nurse in the BCDC medical unit at 8 pm.  She noted the hardened boil and swelling of the penis and scrotum.  Because Gottleib has a history of vasculitis[8] and his medication regimen included Prednisone for reducing inflammation, a determination was made to send him on a non-emergency basis to St. Joseph's Hospital Medical Center for evaluation. (ECF 16-2; ECF-21-2; ECF-24 n. 1).  There, Gottleib was treated with intravenous antibiotics and hospitalized overnight.  (ECF 1 at 7).  A CT scan showed extensive cellulitis but no necrosis.

---

[6] Gottleib faults Cosgrove for attempting to persuade him to complete a medical insurance application and states he has received medical bills for medical care received while incarcerated. (ECF 15). Gottleib asserts that because he is not responsible for medical bills while incarcerated, he wants to name Cosgrove as a defendant because "she is in charge of this whole mess." Id.  As Gottleib does not specify a legal or factual basis to support a federal or constitutional claim against Cosgrove, she was not served with process.

[7] See https://medlineplus.gov/ency/article/000855.htm.

[8] Vasculitis is an inflammation of the blood vessels. See https://vsearch.nlm.nih.gov/vivisimo/cgi-bin/query-meta?v%3aproject=medlineplus&v%3asources=medlineplus-bundle&query=vasculitis&. Gottleib has a history of Wegener type vasculitis, a rare chronic condition that mainly attacks the respiratory system. There is also a close correlation between Wegener's vasculitis and rheumatoid arthritis. (ECF No. 24 n. 1.)

(ECF 21-2 at 7).

On November 22, 2015, Gottleib was admitted to the University of Maryland Medical Center ("UMMC"). *Id.* at 7; ECF 16-3 at 1. Gottleib reported to UMMC medical staff that "[f]ive days ago, he attempted to pop a boil which had developed in his posterior perineum. Two days later, his scrotum became enlarged, red, and tender with tenderness and pain extending posterior along the perineum." (ECF 21-2). Gottleib was diagnosed with a left sided perineal Fournier Gangrene perineum[9] or necrotizing fasciitis of the scrotum. *Id*; *see also* ECF 16-3 at 3. The same day he underwent a surgical procedure to debride his perineum and scrotal areas. (ECF 21-2 at 7). Further, he was treated with a broad spectrum of antibiotics. *Id.* The infection proved persistent and another surgical procedure was performed on November 26, 2015. *Id.* at 9. Gottleib was hospitalized at UMMC for ten days and, according to Gottleib, he underwent three surgical procedures. ECF 1 at 7. The record, however, shows two procedures were performed. (ECF 21-2).

Gottleib claims that had he been taken for medical treatment immediately after his initial request at and his situation been "taken seriously" at BCDC he would "probably still have my scrotum." *Id.* at 10. He states he lost approximately one-third of his scrotum as a result of the surgeries and his scrotum is numb and disfigured. (ECF 1 at 7, 10). He also claims his penis is numb. He expresses concern that "[t]his is going to have a negative effect on my sex life for the remainder of my life." *Id.* at 10.

Gottleib returned to BCDC on December 1, 2015, where he was placed in the medical isolation unit. UMMC medical staff prescribed antibiotics and pain medications for Gottleib. He also had a Jackson-Pratt (JP) drain in place at the surgery site which needed to be emptied

---

[9]   Fournier's gangrene is a rare but life threatening disease. Antibiotics and aggressive debridement are broadly accepted as the standard treatment. *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2585703/.

every eight hours. A silver dressing covering the affected area needed to be kept in place for seven days unless it became soiled. (ECF 16-2 ¶ 7;  ECF 21-2 at 2, 3; ECF 24-1 ¶ 11).  Gottleib was monitored by BCDC medical staff who noted his condition continued improving: he had no infection and his pain was lessening. (ECF 16-2 ¶ 8).  BCDC nursing staff on every shift noted that Gottleib's drain was checked and drainage amounts, if any, were recorded.  The dressing was reported dry. On December 3, 2015, reinforcement tape was applied.  (ECF 24-1 ¶ 11).  On December 6, 2015, a clean dressing was applied. The medical note read: "[D]ressings were soiled, so they were changed.  There was not fluid to empty from the JP drain.  Drain was intact and squeezed to promote suction." *Id.*  The dressings were changed again on December 7 and December 8, 2015, after medical providers examined the wound site for healing and sutures. *Id.* Gottleib complains the isolation unit was an unsanitary environment for a post-surgical patient with a drain and stitches.  He describes the unit as "filthy' and without a working toilet. Gottleib had to use a toilet down the hall. *Id.* at 8.

On December 9, 2015, Gottleib was returned to UMMC for follow-up.  UMMC medical staff removed the JP drain and his external stitches. (ECF 24-3; ECF 1 at 8).  Gottleib's UMMC medical record reports the left and right scrotal closures healed well.  (ECF 24-3 at 1).   No further follow-up was required. *Id.* at 2.

On December 11, 2015, Gottleib was assigned to a BCDC medical ward.  (ECF-1 at 8). Gottleib also describes the medical ward as unsanitary but provides no supporting factual allegations. *Id.*

On December 22, 2015, Nurse Practitioner Zeiders examined Gottleib after he submitted a sick call request complaining of drainage at the surgical area.  (ECF 24-1 ¶ 6).  Zeiders observed a small amount of yellow drainage and no swelling around the wound.  He concluded

6

the site was healing and was not infected. Zeiders was unable to see, but felt a suture in the left

scrotum.   Zeiders cleansed the wound in the left pubis area with saline, covered the wound with

a band aid, prescribed Tylenol 650 mg. for five days, and referred Gottleib to Dr. El Bedawi for

removal of the suture. (ECF 24-1 ¶ 7).  The stitches removed at BCDC were absorbable internal

stitches because Gottleib's external stitches had already been removed at UMMC. *Id.*

On December 24, 2015, Gottleib reported his scrotum was sore and there was leakage at

the surgical site.  (ECF 1 at 9).  The BCDC Defendants indicate Gottleib filed a sick call slip

early in the morning on December 25, 2015.  He was called to the medical unit on December 26,

2015 at 6:35 am. (ECF 24-1 ¶ 8).  He refused to be seen or to sign a refusal of treatment form. *Id.*

On December 27, 2015, Gottleib went to the BCDC medical unit and Nurse Practitioner

Levy-Still removed several stitches that were irritating his skin. Levy-Still prescribed an

antibiotic (amoxicillin) and an anti-inflammatory medication for Gottleib. ECF 16-2 ¶ 11; ECF

24-1 ¶ 9. The medical notes from that visit read:

> Inmate came to medical with c/o drainage and blood from scrotum and possibly
> stitches left in groin from surgery secondary to Fournier Gangrene.  Upon further
> examination, I noted three deep stitches that were probably supposed to be
> absorbable stitches but were very hard and rigid to touch.  Inmate had purulent
> drainage from the sutured site and a macular, popular rash in the groin and
> scrotum area.  Because the site was healing nicely, I clipped the 3 very tight
> sutures because they were actually digging into his skin and causing irritation.

ECF 24-1 ¶ 9.

Gottleib complains received all three doses of antibiotic medication within a six to eight

hour period instead of the prescribed every eight hours. *Id.* at 9.

On December 28, 2015, Gottleib reported a stitch remained in the surgical site. Dr. El-

Bedawi removed the stitch. *Id.* at 10. Nystatin powder was prescribed to treat a yeast infection.

(ECF 16-2 ¶ 12; ECF 24-1 ¶ 10).  BCDC medical providers continued to monitoring Gottleib and

noted that he was healing. (ECF 16-2 ¶13).

On January 11, 2016, Gottleib was seen in the medical clinic for an abscess on his left buttock. A nurse practitioner lanced the abscess, dressed the wound, and instructed Gottleib to continue his antibiotics. The dressings were changed daily. *Id.* ¶14, 17.

On January 16, 2016, Gottleib reported discomfort in his scrotum and perineum. Nurse Practitioner Stevens examined Gottleib that morning. Stevens observed addition sutures and removed them. She also noted a small amount of pus. *Id.* ¶15. Stevens wrote the following note on Gottleib's electronic health record:

> Inmate presents to medical for a wound check of the surgical site. On exam: he has a sinus tract (size of pin head) at the base of the incision that is oozing creaming yellow discharge. Rest of the incision is well-healed. No redness or surrounding erythema. Inmate as advised to stop using the nystatin. Continue current antibiotics. Inmate cleared to return to housing unit. Will consult with Dr. El-Bedawi about sending him for follow up with soft tissue service at University of Maryland.

ECF 24-1 ¶ 6 Gottleib was seen later that day in the early afternoon and in the evening by medical providers. (ECF 24-1 ¶6).

Gottleib was admitted to UMMC on January 16, 2016, where he received a CT scan and an ultrasound test to detect the presence of infection. (ECF 21-3 at 1; ECF 16-2 ¶16). The test results showed no infection and Gottleib returned to BCDC. (ECF 16-1 ¶16). A follow-up visit in two weeks was recommended. (ECF 21-3 at 1). Gottleib faults Defendants for failing to transport him back for this follow-up visit. (ECF 18 at 1 ¶3). Bonita Cosgrove, the BCDC medical liaison, attests the necessary paperwork to schedule a surgical follow-up visit for Gottleib at UMMC was prepared, but medical staff at UMMC determined a follow-up examination was unnecessary. (ECF 24-1 ¶2; ECF 24-3). Cosgrove's reference is to a UMMC recommendation dated December 9, 2015, concerning Gotleib's first UMMC admission. *Id.*

Each Medical Defendant has filed a declaration. (ECF 21-5, 21-6, 21-8). Memmie Peal, LPN, states she had only one interaction with Gottleib which occurred on May 29, 2015, when she completed his intake screening. Peal attests she never saw Gottleib in connection with Fornier gangrene infection or necrotizing fascitits of the scrotum. (ECF 21-5).

Melvin Zeiders, CRNP, attests to having only two interactions with Gottleib. Zeiders saw Gottleib on December 21, 2015 for discomfort from a stitch in his scrotum after surgery. Zeider referred Gottleib to Dr. El-Bedawi because he was unable to see the stitch. (ECF 21-6). [10] Zeiders states he did not see Gottleib in connection with necrotizing fasciitis of the scrotum or Fournier gangrene prior to his admission to UMMC for treatment. *Id.*

Khalid El-Bedawi, M.D., attests he did not see Gottleib in connection with the Fournier's gangrene infection prior to his admission to UMMC. El–Bedawi states he "never saw Mr. Gottleib in connection with his necrotizing fasciitis of the scrotum or Fournier gangrene infection prior to him being admitted to UMMC for treatment and diagnosis of the same." (ECF 21-8 ¶3). El-Bedawi had several interactions with Gottleib after his release from UMMC and provided follow-up treatment. El-Badawi saw Gottleib on December 3, 4, 7, 8, 9, 10, and 28, 2015, and January 18, February 1, and February 4, 2016, to monitor his condition and provide treatment. *Id.* ¶4. On February 4, 2016, El-Bedawi cleared Gottleib to return to the general prison population and return to work pursuant to the recommendation of UMMC staff. El-Bedawi attests no further follow-up was required. *Id.* ¶ 5.

---

[10] Zeiders' declaration is signed but undated. (ECF 21-6).

9

## STANDARD OF REVIEW

## I.   MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, this Court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997); *see also Aziz v. Alcolac, Inc.,* 658 F.3d 388, 390 (4th Cir. 2011) (noting that for purposes of a motion to dismiss a court accepts as true the well-pled, non-conclusory factual allegations in a complaint). A court "need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). *Twombly* set forth "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a Court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a complaint must be dismissed if it does not allege a "plausible" claim for relief. *Id.* at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

If on a motion asserting the defense of dismissal for the failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion is treated as one for summary judgment and considered of as provided in Rule 56. *See e.g. Talbot v. U.S. Foodservice, Inc.,* 191 F.Supp.2d 637, 639 (D. Md. 2002).

## II.     MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd,* 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.,* 718 F.3d at 312; *see also Scott*

*v. Harris*, 550 U.S. 372, 378 (2007).   A court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)).

This Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

This Court is also mindful that Gottleib is self-represented. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Cruz v, Beto*, 405 U.S. 319 (1972). Liberal construction does not mean, however, that this Court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). This Court cannot assume the existence of a genuine issue of material fact where none exists. Fed.R.Civ.P. 56(c).

## DISCUSSION

## I.      THE BCDC DEFENDANTS

The BCDC Defendants argue  that apart from naming them as defendants in the caption

of the Complaint, Gottleib presents no facts to suggest they were personally involved or disregarded his serious medical needs in contravention of the Eighth Amendment's proscription against cruel and unusual punishment, and in any event, they are entitled to qualified immunity. (ECF 16-1 at 13, 14, 15-16).

If Gottleib has named the BCDC Defendants based on their supervisory responsibilities, his claims fare no better. A defendant in a § 1983 action may not be held liable based upon the theory of respondeat superior. *See Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Love–Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004). Instead, supervisory liability is "determined 'by pinpointing the persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)). "Supervisory liability under §1983 must be supported with evidence: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw*, 13 F.3d at 799. Here, Gottleib sets forth no allegations to satisfy the standard for assigning supervisory liability. Consequently, the BCDC Defendants' Motion to Dismiss will be granted.[11] Gottleib's claims against the BCDC Defendants will be dismissed with prejudice.

---

[11] Accordingly, this Court need not address the BCDC Defendants' qualified immunity defense.

13

## II.    THE MEDICAL DEFENDANTS

The Medical Defendants assert failure to exhaust administrative remedies as an affirmative defense. (ECF 21-1). The Medical Defendants also aver that on the dates mentioned in the Complaint, they were not working, and they are entitled to dismissal or summary judgment in their favor because Gottleib fails to establish they acted with requisite deliberate indifference. (ECF 21, 25).

### A.  LACK OF ADMINISTRATIVE EXHAUSTION

In Maryland, inmates are not "required to exhaust the administrative remedy process involving claims filed against healthcare staff because the Maryland DOC has not made the ARP process available to them in such cases." *Wilson v. Md. Division of Correction, et al.* No. DKC–11–111, 2011 WL 2118956, at \*2 n. 4 (D. Md. May 25, 2011). It is unclear whether this exception applies to Maryland's county detention centers and the Medical Defendants do not provide evidence such as an inmate handbook that would have informed Gottleib of the need to exhaust his medical claims. An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *See Ross v. Blake*, 136 S. Ct. 1850, 1859 (4th. Cir. 2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)); *see also Moore v. Bennette*, 517 F.3d 717, 725 (ruling "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it"). Since administrative remedies may not have been fully available to Gottleib within the meaning of 42 U.S.C. §1997e(a), his claims against the Medical Defendants will not be dismissed for lack of exhaustion.

### B. CLAIM OF INADEQUATE MEDICAL CARE

In order to demonstrate constitutionally inadequate medical care in violation of the Eighth Amendment, a prisoner must prove two elements: "(1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." *See Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective element is satisfied by a serious medical condition, and the subjective element is satisfied by showing deliberate indifference. *Id.* "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, prison staff was aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *Id.* at 837 (1994).

The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F .2d 848, 851 (4th Cir. 1990) (citation omitted). A defendant must know of and disregard an excessive risk to inmate health or safety. "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer* 511 U.S. at 835

A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* (quoting *Farmer*, 511 U.S. at 844); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir.1997) (holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm). Claims of inadequate medical care under the Eighth Amendment against a non-medical prison official require demonstration that the official was personally involved with denial of treatment, deliberately interfered with a prison physician's treatment, or tacitly authorized or was indifferent to the medical provider's misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *Smith v. Barry*, 985 F.2d 180, 184 (4th Cir. 1993).

"Disagreements between an inmate and a physician over the inmate's proper medical care" is not enough to state a claim of deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). "[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson*, 145 F. 3d at 166.

Gottleib claims that had he been taken for medical treatment immediately after his initial request for assistance and his situation been "taken seriously" at BCDC he would not have lost a large part of his scrotum and been disfigured. (ECF 1 at 7, 10). Memmie Peal attests she did not treat Gottleib for the infection. Melvin Zeiders, and Dr. Khalid El-Bedawi attest they did not treat Gottleib for Fournier gangrene until after his initial hospitalization at UMMC. Gottleib offers no testamentary evidence to refute their declarations.

There is no dispute that Fournier's gangrene is a serious, potentially life-threatening

medical condition. The record demonstrates that Gottleib received extensive and continuing medical care for his condition, including treatment with oral and intravenous antibiotics, CT scans and ultrasound tests, outside medical consultations, surgical procedures, medication, vulnery care, and regular monitoring.

As discussed, Gottleib neither names the correctional officers from whom he requested a medical escort, nor claims they acted with requisite deliberate indifference. Gottleib's initial visit to the medical unit on November 20, 2015, included an evaluation, diagnosis of cellulitis, and treatment with a course of oral antibiotics, an analgesic, and warm compresses. He was instructed to follow-up in three days. He was monitored and taken to UMMC when it became clear his condition warranted more specialized medical care. Gottleib may disagree with the treatment initially provided, but he received attentive care which falls far short of deliberate indifference. Similarly, Gottleib's concern about the lack of a follow-up at UMMC to his January 16, 2016, UMMC admission, provides no basis for an Eighth Amendment claim. The record shows that he was being regularly followed by BCDC medical personnel at the time and was progressing. Lastly, the identity of the BCDC medical provider who initially provided treatment is of no moment as the manner and mode of treatment provided refute the suggestion of constitutionally inadequate medical care.

In sum, the record fails to show the Medical Defendants acted with subjective deliberate indifference to serious medical needs. Even when Gottleib's claims are viewed in light most favorable to him, there is no genuine issue of material dispute to satisfy the subjective component of the deliberate indifference standard necessary to state an Eighth Amendment medical claim. Accordingly, the Medical Defendants are entitled to summary judgment in their favor as a matter of law.

17

## CONCLUSION

For the aforementioned reasons, the BCDC Defendants' Motion to Dismiss (ECF 16) will be GRANTED.   The claims against the BCDC Defendants will be DISMISSED WITH PREJUDICE. The Medical Defendants' Motion to Dismiss or, in the Alternative for Summary Judgment (ECF 21), treated as a Motion for Summary Judgment, will be GRANTED.   Summary judgment will be entered in favor of the Medical Defendants.   A separate Order follows.

_OCTOBER 13, 2016_
Date

_RICHARD D. BENNETT_
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

18